UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA SHEPARD,

       Plaintiff,

v.

HOMESITE GROUP
INCORPORATED,

       Defendant.

_____/

Hon. Sally J. Berens

Case No. 1:24-cv-804

## OPINION

Plaintiff Lisa Shepard has sued her former employer, Homesite Group Incorporated, alleging that it violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and its Michigan counterpart, the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), M.C.L.A. § 37.1101 *et seq.* (Counts I and II), by discriminating against her and failing to provide a reasonable accommodation. (ECF No. 1 at PageID.6–7.) Shepherd further alleges that Homesite violated the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, by interfering with her exercise of her FMLA rights and by retaliating against her for exercising those rights (Count III). (*Id.* at PageID.7–8.)

Presently before the Court is Homesite's Motion for Summary Judgment (ECF No. 52), which is fully briefed and ready for decision.[1] For the following reasons, the Court will **GRANT** Homesite's motion for summary judgment.[2]

## I.      Background

### A.      Shepard's Employment with Homesite

Homesite is a property and casualty insurance company that markets policies directly to individuals. Because internet and phone are Homesite's predominant form of contact with consumers, many of its agents and other employees work remotely. (ECF No. 52-5 at PageID.291.)

Shepard began her employment with Homesite in April 2022, when it hired her to work remotely as a Coaching Supervisor. (ECF No. 52-2 at PageID.209, 224, 226.) In that position, Shepard supervised a team of 15 to 20 customer service agents who worked remotely taking inbound calls from policyholders. (*Id.* at PageID.209.) She was responsible for ensuring that her team met performance metrics and complied with internal policies and for boosting the team's morale and productivity. (*Id.*; ECF No. 52-7 at PageID.367.) Shepard's normal activities included conducting one-on-one coaching sessions with her team members, providing quality feedback and de-escalation techniques, conducting monthly and bi-annual performance reviews and taking corrective action as needed, collaborating with human resources or employee relations to address policy violations, attending weekly and monthly meetings, and handling policyholder calls on occasion. (*Id.* at PageID.211, 212–13, 215–16, 220–23; ECF No. 53-1 at PageID.621.)

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings, including entry of judgment, in this case. (ECF No. 47.)

[2] Although both parties have requested oral argument, the Court finds it unnecessary as their briefs adequately develop the issues.

Senior Manager Jessica Sadeghi-Guran supervised Shepard from the time of her hire until June 2023, when Operations Manager Amanda Meulemans became Shepard's supervisor. (ECF No. 52-7 at PageID.368–69; ECF No. 52-8 at PageID.411; ECF No. 53-1 at PageID.625.) However, Sadeghi-Guran remained Shepard's assigned supervisor in Homesite's human resources information system and provided support to Meulemans during the supervisor transition. (ECF No. 52-7 at PageID.369; 52-8 at PageID.414.)

### B.  Shepard Requests FMLA Leave

Prior to joining Homesite, Shepard was diagnosed with degenerative disc disease. Although the condition does not produce constant symptoms, when she has a flareup it causes debilitating muscle spasms that make it difficult for her sit up or move easily. (ECF No. 52-4 at PageID.280.) In May 2023, Shepard re-injured her lower back and applied for FMLA leave through Sedgwick, Homesite's third-party administrator for its FMLA leave program, short- and long-term disability benefits, and disability accommodation requests. (ECF No. 52-3 at PageID.161–63; ECF No. 52-5 at PageID.291.) Sedgewick granted Shepard a continuous period of FMLA leave and short-term disability (STD) from May 17 through June 4, 2023. (ECF No. 52-3 at PageID.249–50; ECF No. 53-1 at PageID.621–22.) Later that summer, Shepard experienced another flareup and Sedgewick granted her request for intermittent FMLA leave. (ECF No. 52-3 at PageID.250.)

In August 2023, Shepard experienced more back pain and applied for another period of FMLA leave and STD. Sedgewick granted this request for a period beginning on August 18, 2023, with an expected return to work (RTW) date of September 18, 2023. (*Id.* at PageID.121, 164; ECF No. 52-10 at PageID.451; ECF No. 53-1 at PageID.622.) On September 22, 2023, Shepard requested an extension of her medical leave, which Sedgwick granted with a revised RTW date of

October 17, 2023. (ECF No. 52-10 at PageID.455, 457; ECF No. 53-1 at PageID.622.) During Shepard's leave, Sedgewick sent updates about Shepard's status to Sadeghi-Guran, who forwarded them to Meulemans or to the internal employee relations department as necessary. (ECF No. 52-7 at PageID.373–74; ECF No. 52-8 at PageID.413–14.) In other words, Sadeghi-Guran and Meulemans relied solely on information that Sedgewick provided and had no direct contact with Shepard. (ECF No. 52-7 at PageID.368–69; ECF No. 53-1 at PageID.624.)

Shepard exhausted her FMLA leave on October 24, 2023. (ECF No. 52-3 at PageID.254; ECF No. 53-1 at PageID.623.) At that time, Shepard was medically unable to return to her work at Homesite, and her doctor was unable to provide a RTW date. (ECF No. 52-1 at PageID.254; ECF No. 53-1 at PageID.623.) However, Sedgewick granted Shepard's request to extend her STD benefits through December 13, 2023, the date of her next neurology appointment. (ECF No. 52-3 at PageID.254.)

In Shepard's absence, three individuals had been assigned to perform her duties. Matt Broscha, a senior member of Shepard's team, provided interim coaching support to the team while also performing his regular duties, and two other coaching supervisors were assigned Shepard's managerial tasks while continuing to manage their own teams. (EF No. 52-7 at PageID.376–77; ECF No. 52-8 at PageID.432–33.) Given Shepard's extended leave, Sadeghi-Guran and Meulemans began to explore options for providing Shepard's team support and leadership depending upon her ability to return to work. (ECF No. 52-7 at PageID.398–401.) If Shepard exhausted her FMLA leave but remained on STD without an ADA accommodation, replacing her position would have been an option to meet business needs. (*Id.* at 399–400; ECF No. 52-11.) Homesite may utilize "[p]osition replacement" when an employee is on leave by filling the position with a new individual, but it does not entail terminating the replaced employee or

4

eliminating the position. (ECF No. 52-6 at PageID.338.) The replaced employee continues on leave with access to employee benefits and, when able to return to work, may return to their original position, if available, or to other open positions. (*Id.* at PageID.343; 52-8 at PageID.427–29.) The employee is terminated only if no positions are available when the employee is able to return to work. (ECF No. 52-6 at PageID.343.)

### C.    Homesite Terminates Shepard's Employment

When a Homesite employee exhausts his or her FMLA leave, Sedgwick informs the employee of the next steps, including requesting an ADA accommodation. (*Id.* at PageID.340–41.) Although Shepard claims that she submitted an accommodation request to Sedgewick around the time she exhausted her FMLA leave, it is undisputed that Homesite did not receive an accommodation request through Sedgewick until December 8, 2023.[3] (ECF No. 52-3 at PageID.252; ECF No. 52-5; ECF No. 52-6 at PageID.329–30, 340, 353–54; ECF No. 53-1 at PageID.624.)

On October 26, 2023, Sadeghi-Guran and Meulemans met with Employee Relations Specialist Clark Carter to discuss the next steps regarding Shepard's situation and whether Homesite could accommodate an indefinite leave. (ECF No. 52-5 at PageID.306; ECF No. 52-6 at PageID.325–28; ECF No. 52-8 at PageID.426.) During the meeting, Carter explained that, even if Shepard requested an accommodation, Homesite may be able to replace the position if the request was unreasonable, and its business needs warranted replacement. (ECF No. 52-6 at PageID.331–333.) They concluded that they had no clear alternatives at that time because they would need to

---

[3] Whether Shepard submitted a timely accommodation request to Homesite is immaterial to the Court's analysis of the ADA claims.

determine whether Shepard had a RTW date and whether she would request an accommodation. (*Id.* at PageID.328, 331.)

By mid-November 2023, Homesite learned that Shepard's healthcare provider had indicated that there was no end date for Shepard's incapacity. (ECF No. 52-3 at PageID.241–42.) On November 22, 2023, Sadeghi-Guran, Meulemans, and Carter met to discuss replacing Shepard's position due to the length of her absence and the impact it was having on her team. (ECF No. 52-6 at PageID.334–37; ECF No. 52-7 at PageID.405; ECF No. 52-8 at PageID.419–22.) During the meeting, Meulemans expressed concerns that Shepard's team had been struggling in her absence and needed consistent leadership. Meulemans also had concerns about attrition and the team's lack of engagement due to the absence of consistent management. (*Id.* at PageID.422–23.) In addition, Sadeghi-Guran was concerned that Broscha and the two coaching supervisors were under added pressure as they assumed additional responsibilities filling in for Shepard. (ECF No. 52-7 at PageID.376–77.) Ultimately, Meulemans decided to replace Shepard. (ECF No. 52-8 at PageID.418–19.)

On November 29, 2023, Sadeghi-Guran and Carter called Shepard to let her know that her position was bring replaced due to business needs. (ECF No. 52-3 at PageID.256–57.) They conducted the call according to standard talking points that Homesite uses to ensure consistency in communication. (ECF No. 52-6 at PageID.341–43, 345–46.) During the call, Shepard became emotional and told Sadeghi-Guran and Carter to "go fuck [them]selves," and continued to use the same language, even though Carter "ask[ed] her not to use that language." (*Id.* at PageID.350–51.) Sadeghi-Guran also recalls Shepard telling her that she was "a fucking bitch," that she was "a horrible supervisor," and that she did not "deserve to be a mother." (ECF No. 52-7 at PageID.389–90; ECF 52-13.) While Shepard denies using most of this language, she admits using the "f-word"

6

and being emotional during the conversation.[4] (ECF No. 52-3 at PageID.257–59; ECF No. 52-15.) In fact, Shepard "recall[s] uttering *at least one* strong curse word out of frustration." (ECF NO. 53-1 at PageID.629.)

Following the conversation with Shepard, Carter reached out to Sadeghi-Guran to discuss the tone of Shepard's comments and her use of inappropriate language. Sadeghi-Guran told Carter that she was concerned about Shepard's poor professional behavior and verbal attacks given her leadership and customer-facing roles. (ECF No. 52-6 at PageID.360–61; ECF No. 52-7 at PageID.371.) Sadeghi-Guran recommended termination of Shepard's employment for violating Homesite's standards of conduct during the November 29, 2023 conversation. (*Id.*) After consulting with their supervisors and Homesite's legal department, Carter and Sadeghi finalized the decision to terminate Shepard's employment. (ECF No. 52-6 at PageID.358–59; ECF NO. 52-7 at PageID.394–95.) On December 13, 2023, Sadeghi-Guran and Carter called Shepard to inform her that her employment would be terminated effective December 14, 2023, based on her use of profanity and violation of Homesite's standards of conduct during the November 29 phone call. (ECF No. 52-3 at PageID.262; ECF No. 52-17.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty*

---

[4] During the conversation, Carter mistakenly told Shepard that her health insurance would terminate effective December 1, 2023. Following the call, Carter looked into the issue and determined that her insurance would continue through any approved period of STD benefits. Carter conveyed this information to Shepard the next day. (ECF No. 52–3 at PageID.253; ECF No. 52-6 at PageID357; ECF No. 52-14.)

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.   Discussion

#### A.    Shepard's Declaration

In support of her response to Homesite's motion, Shepard has submitted a 19-page declaration that, in many ways, reads like a brief. A declaration should not contain argument, *see Gonzalez v. Parker Hannifin Corp.*, No. 2:18-CV-212, 2020 WL 13698922, at *4 (E.D. Tenn. Nov. 16, 2020) ("Legal argument is not personal knowledge."), but Shepard's does. Homesite contends that the declaration is improper because much of it is based on hearsay, speculation, and improper legal argument, and it asks the Court to strike or disregard the offending portions.

Having fully reviewed the declaration, the Court finds Homesite's objections well taken. Pursuant to Federal Rule of Civil Procedure 56(c)(4), affidavits and declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "[S]peculation, legal conclusions, and inadmissible hearsay . . . [are] insufficient to create a question of fact upon which summary judgment may be denied." *Jamison v. Angelo*, No. 4:10CV2843, 2012 WL 4434152, at *9 (N.D. Ohio Sept. 24, 2012). Statements qualified with "I later learned through this lawsuit," "I also find it significant," "In fact, I learned," "I genuinely believe," or asserting, "I strongly disagree" (ECF No. 53-1 at PageID.625, 632, 633, 635), and the like cannot defeat summary judgment and do not

8

belong in an affidavit or declaration. While the Court finds it unnecessary to parse Shepard's declaration line-by-line to expressly identify each statement that is inadmissible, it will consider only those statements that comply with Rule 56(c)(4)'s personal knowledge requirement in deciding whether Shepard has presented sufficient evidence to create a genuine issue of material fact on her claims.

### B.     ADA/PWDCRA Claims

As noted, Shepard brings disability discrimination and failure-to-accommodate claims under both the ADA and the PWDCRA. The Sixth Circuit has observed that the PWDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) (citation omitted). Because both parties address Shepard's disability claims in a single analysis, the Court will do the same. *See Fraker v. City of Grand Rapids*, No. 1:18-cv-1444, 2020 WL 5642254, at *6 (W.D. Mich. Sept. 4, 2020); *Notarnicola v. Johnson Controls Inc.*, No. 12-11331, 2014 WL 1304591, at *7 (E.D. Mich. Mar. 28, 2014).

### 1.     Disability Discrimination

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). An employer cannot take an adverse employment action against a qualified employee "because of" the employee's disability. 42 U.S.C. § 12112(b)(1). The ADA's "because of" language creates a "but for" causation standard. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir. 2012) (en banc) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)).

A plaintiff may establish a discrimination claim through direct or circumstantial evidence. *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 79 (6th Cir. 2020). Shepard does not present direct

evidence of discrimination to support her claim, so she must proceed under the familiar *McDonnell Douglas* burden-shifting framework. *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017). To establish a prima facie case, a plaintiff must show that: "(1) she has a disability, (2) she is 'otherwise qualified for the position, with or without reasonable accommodation,' (3) she 'suffered an adverse employment decision,' (4) her employer "knew or had reason to know" of her disability, and (5) she was replaced or her position remained open." *Id.* (citing *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011)). A plaintiff may also satisfy the fifth element "by showing that similarly situated non-protected employees were treated more favorably." *Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007).

If the plaintiff establishes a prima facie case of disability discrimination, then the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action against the plaintiff. *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 298 (6th Cir. 2019). If the defendant does so, the burden of production shifts back to the plaintiff to show that proffered reason was, in fact, a pretext for unlawful disability discrimination. *Id.* A plaintiff can prove pretext by showing "that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009) (internal quotation marks omitted). To survive a motion for summary judgment, the plaintiff must show that "there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011) (citation omitted).

### *Prima Facie Case*

Shepard's claim fails at the initial stage because Homesite has demonstrated that she cannot present evidence to establish three elements of her prima facie case, specifically, that: (1) she was

10

"otherwise qualified" for her position; (2) Sadeghi-Guran or Meulemans knew or had reason to know that Shepard had a qualifying disability; and (3) Homesite treated any similarly situated non-disabled individual differently than Shepard for the same or similar conduct.[5] (ECF No. 52 at PageID.190–95.)

### a. Otherwise Qualified

Homesite has shown that Shepard was not "otherwise qualified" because she was unable to perform the essential functions of her position "with or without reasonable accommodation." Contrary to Shepard's argument, Homesite does not rely on a "bare assertion . . . that [Shepard] was unable to work." (ECF No. 53 at PageID.611.) It cites her deposition testimony that in mid-November and December 2023 she was unable to return to work because she could not sit or stand for more than a few minutes at a time, care for her pets, shower without assistance, engage in physical activity, or work. (ECF No. 52-3 at PageID.242–45.) She had no RTW date at that time. (*Id.* at PageID.241.) Shepard also admitted she was not physically able to return to work until February 2024—a fact neither she nor her doctor could have known in November or December 2023. (*Id.* at PageID.245.)

Shepard also fails to present evidence that she could have worked had she been granted a reasonable accommodation. The only accommodation Shepard requested was indefinite leave (ECF No. 52-3 at PageID.265 ("I needed additional time off.")), but the Sixth Circuit has held that "[a]n employer is not required to keep an employee's job open indefinitely."[6] *Williams*, 847 F.3d

---

[5] For purposes of its summary judgment motion, Homesite does not dispute that Shepard had a qualifying disability or that she was subjected to an adverse employment action.

[6] In her response, Shepard argues that Homesite should have considered telework (ECF No. 53 at PageID.611), but this assertion ignores that she was already fully remote.

at 394. As the *Williams* court explained, "additional leave is an objectively unreasonable accommodation where an employee has already received significant amounts of leave and has demonstrated 'no clear prospects for recovery.'" *Id.* (quoting *Walsh v. United Parcel Serv.*, 201 F.3d 718, 717 (6th Cir. 2000)); *see also Cleveland v. Federal Express Corp.*, 83 F. App'x 74, 78 (6th Cir. 2003) ("Where an employee is incapacitated from work by a condition whose end cannot be determined with any certainty, the ADA does not always require that the employer allow indefinite leave." (citing *Boykin v. ATC/VanCom of Colo., L.P.*, 247 F.3d 1061, 1064 (10th Cir. 2001))); *Claspell v. Denso Mgf. Mich., Inc.*, No. 5:97-CV-69, 1998 WL 480875, at *7 (W.D. Mich. June 26, 1998) ("'Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected.'" (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998))). When an employee requests additional medical leave following a lengthy initial period, the key to reasonableness is whether "its duration is definite." *Maat v. County of Ottawa*, 657 F. App'x 404, 412 (6th Cir. 2016).[7] Here, it is undisputed that by early December 2023, Shepard had already taken approximately sixteen weeks of continuous medical leave, and there was no "'certain or credibly proven end' to the leave." *Id.* at 413 (quoting *Aston v. Tapco Int'l Corp.*, 631 F. App'x 292, 298 (6th Cir. 2015)). Shepard's doctor could not provide a RTW date and Shepard could not say when she could return. Shepard's hindsight-based statement in her declaration that "she likely would have been able to return to work in early 2024" if Homesite had allowed her more time (ECF No. 53-1 at PageID.637), is insufficient to defeat summary judgment.

---

[7] Michigan courts addressing the PWDCRA have held that "[a]n employer's duty to make 'reasonable accommodation' . . . does not extend to granting the plaintiff a medical leave until such time as he would be able to perform the requirements of his job." *Kerns v. Dura Mech. Components, Inc.*, 242 Mich. App. 1, 16 (2000).

### b.    Knowledge of Disability

It is well established that an employer "cannot discriminate 'because of' a disability if it has no knowledge of the disability." *Kocsis v. Multi-Care Mgm't, Inc.*, 97 F.3d 876, 884 (6th Cir. 1996). "An employer has notice of the employee's disability when the employee tells the employer that [s]he is disabled." *Brown v. BKW Drywall Supply, Inc.*, 305 F. Supp. 2d 814, 828–29 (S.D. Ohio 2004) (citing *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 449–50 (6th Cir. 1999)). A supervisor's mere knowledge that an employee took leave is insufficient to establish this element. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016). Thus, "[a] prima facie case is not made out if the decisionmaker is unaware of the specifics of an employee's disabilities or restrictions, even if the decisionmaker has a general knowledge that a disability exists." *Id.*

Shepard fails to show that any of the relevant decisionmakers—Sadeghi-Guran and Meulmansr—knew or should have known of her disability. Sadeghi-Guran testified that, while she was aware that Shepard had taken FMLA leave and was on approved STD, she knew none of the details pertaining to Shepard's health issue. (ECF No. 52-7 at PageID.368, 401.) Meulemans said she knew "[a]t a high level" that Shepard "had issues with her back" but was not aware of the medical details of her leave. (ECF No. 52 at PageID.412.) There is also no evidence that Carter—a non-decisionmaker—was aware of Shepard's disability. Shepard presents no evidence showing that Sadeghi-Guran or Meulemans were aware of her disability. While Shepard asserts in her declaration that she informed her supervisors about her "back issues" in 2022 and 2023, and she argues that Meulemans knew she was taking FMLA leave (ECF No. 53-1 at PageID.636), these vague assertions and inadmissible argument fail to show that any decisionmaker was aware of her disabilities or restrictions.

While Shepard has, in the Court's view, failed to establish this requirement, even if she had, her claim would fail on the other elements. Moreover, as discussed below, she fails to establish pretext.

### c.    Comparators

Shepard seeks to establish the fifth element of her prima facie case by providing comparator evidence. To make this showing, a plaintiff must present evidence that the employee with whom she seeks to compare herself was outside the protected class and was "similarly situated *in all respects*." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (italics in original). "[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*; *see also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (finding a plaintiff need not demonstrate an exact correlation, but must establish that a comparator is similarly situated to plaintiff "in all relevant respects"); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (to be similarly situated, a comparator must have engaged in an act of "comparable seriousness").

As to her termination, Shepard fails to identify any Homesite employee who engaged in the use of profane language or similar conduct with supervisors but was not terminated. Shepard cites three employees, Lisa Roberts, Adelle Neal, and Meulemans, as comparators for replacement. (ECF No. 53 at PageID.612.) Shepard contends that these employees are similarly situated because they held similar supervisory roles, took FMLA leave, and returned to work without being replaced. (*Id.*) Contrary to Shepard's argument, her comparator evidence is not sufficient to survive summary judgment. To begin, Shepard provides no evidence showing that Roberts, Neal,

14

or Meulemans are outside the protected class, that is, that they are not disabled. In addition, although Roberts and Neal were also coaching supervisors, they did not report to Meulemans (ECF No. 52-8 at PageID.438), and Meulemans was Shepard's supervisor, not a coaching supervisor. Perhaps most importantly, unlike Shepard, all three proposed comparators returned to work; none were out indefinitely. (*Id.* at PageID.397; ECF 52-8 at PageID.437.) Thus, Shepard's prima facie case fails on this element as well.

### *Pretext*

Homesite has presented legitimate, nondiscriminatory reasons for the alleged adverse actions at issue. Its decision to replace Shepard's position was based on its business-based assessment that Shepard's team required consistent management from a dedicated coaching supervisor, and its decision to terminate Shepard's employment was based on her unprofessional conduct during the November 29, 2023 phone call.

Shepard presents no argument or evidence of pretext with regard to the replacement decision. Regarding the termination, she contends that it was "excessive and plainly pretextual" because she had no prior discipline or warnings and other similarly situated employees who took extended leave were not subject to similar consequences. (ECF No. 53 at PageID.612.) As already noted, Shepard's comparator evidence cannot establish differential treatment, and her "view" that Homesite's justification for the termination is pretextual and "belie[f]" that disability discrimination motivated its decisions to replace her position and terminate her employment (ECF No. 53-1 at PageID.637) cannot support a finding of pretext. While Shepard clearly disagrees with Homesite's decisions, "[m]ere disagreement with the basis for the [replacement or] discharge does not create a genuine issue of material fact with respect to pretext." *Lim v. Terumo Corp.*, No. 14-1513/14-1573, 2015 WL 13928184, at *3 (6th Cir. Apr. 2, 2015) (citing *Braithwaite v. Timken*

*Co.*, 258 F.3d 488, 493–94 (6th Cir. 2001); *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987)). Moreover, Shepard's position is contrary to the Sixth Circuit's honest belief rule, which provides that, "so long as the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). Because the issue here is whether Homesite acted with a discriminatory motive, not whether its decisions were fair, correct, or sound, Shepard fails to present evidence showing that Homesite's reasons were pretext.

### 2. Failure to Accommodate

A failure to make a reasonable accommodation constitutes disability discrimination. 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case of failure to accommodate, a plaintiff must show that: (1) she is disabled under the ADA; (2) she is otherwise qualified for the position, with or without a reasonable accommodation; (3) her employer knew or had reason to know of her disability; (4) she requested a reasonable accommodation; and (5) the employer failed to provide the reasonable accommodation. *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015).

Shepard's failure-to-accommodate claim is subject to summary judgment because, as discussed above, the evidence fails to show that she was otherwise qualified or that Homesite knew or had reason to know of her disability, and her requested accommodation was not reasonable. In addition, although Shepard claims that she requested an accommodation in October 2023, it is undisputed that Homesite was not aware of the accommodation request until, at the earliest, December 8, 2023, after the November 29, 2023 phone call with Carter and Sadeghi-Guran that provided the basis for her termination.

16

### C.    FMLA Claims

#### 1.    Interference

In order to establish an FMLA interference claim, a plaintiff must show that: (1) she was an eligible employee; (2) the defendant is a covered employer; (3) she was entitled to leave under the FMLA; (4) she gave the defendant notice of her intent to take leave; and (5) the defendant denied her FMLA benefits or interfered with FMLA rights to which she was entitled. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). Shepard's interference claim fails because the evidence shows that Shepard took all of the leave to which she was entitled without interference from Homesite. Contrary to Shepard's assertion, Homesite did not interfere with her right to reinstatement because she was unable to return to work upon expiration of her leave. Shepard's reliance on *Arban v. West Publishing Corp.*, 345 F.3d 390 (6th Cir. 2003), is misplaced because the defendant in *Arban* terminated the plaintiff's employment during his leave, which did not occur here.

#### 3.    Retaliation

A plaintiff may prove an FMLA retaliation claim either through direct or indirect evidence. *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 432 (6th Cir. 2014). Because Shepard lacks direct evidence of FMLA retaliation, she must establish her claim under the circumstantial evidence framework by showing that:

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald*, 667 F.3d at 761 (quoting *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)). If the plaintiff establishes a prima facie case, "the burden shifts to the employer to proffer

17

a legitimate, nondiscriminatory rationale for discharging the employee." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

Homesite contends that Shepard fails to establish a prima facie of case of retaliation because temporal proximity is her only evidence of a causal connection and the period of time between when Homesite learned of Shepard's protected activity in May 2023 and when it took the first alleged adverse action of replacing her position on November 22, 2023, is too attenuated to infer a causal connection. (ECF No. 52 at PageID.200–01.) Shepard responds that temporal proximity is sufficiently close to support a causal connection because Homesite made the decision to replace her position on October 26, 2023. (ECF No. 53 at PageID.596.) This contention is meritless because it relies solely on Shepard's unsupported speculation in her declaration. (ECF No. 53-1 at PageID.625.) The only admissible evidence in the record, recounted above, shows that Sadeghi-Guran and Meulemans did not make the decision to replace Shepard's position until November 22, 2023.

The Court need not decide the issue of causation because, as set forth above, even if Shepard could establish a prima facie case, Shepard has failed to show that Homesite's legitimate, non-retaliatory reasons for replacing her position and terminating her employment were pretext for unlawful conduct.[8] Accordingly, Homesite is entitled to summary judgment on Shepard's FMLA claims.

---

[8] In any event, Homesite has the better of the argument. Even if August 18, 2023, is considered the date Homesite learned of Shepard's protected activity (taking FMLA leave), the three-month period that elapsed before Homesite decided to replace Shepard's position is insufficient to support a causal connection, particularly because Shepard fails to put forth any other evidence on the issue. *See Bush v. Compass Grp. USA, Inc.*, 683 F. App'x 440, 451–52 (6th Cir. 2017) (holding that two-and-one-half month period between employer learning of the plaintiff's leave and its termination decision was, without other evidence, insufficient to establish causal connection).

### IV.    Conclusion

For the foregoing reasons, the Court will **grant** Homesite's motion for summary judgment and dismiss Shepard's complaint **with prejudice**.

A separate order will enter.


Dated: March 31, 2026                                             /s/ Sally J. Berens
                                                                         SALLY J. BERENS
                                                                         U.S. Magistrate Judge